UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LaKISHA NEAL-LOMAX; LaKISHA NEAL-LOMAX as parent and guardian of JOSHUA WILLIAM LOMAX; LaKISHA NEAL-LOMAX as parent and guardian of ALIAYA TIERRAEE LOMAX; and JOYCE CHARLESTON, individually, and as Special Administrator of the Estate of WILLIAM D. LOMAX, JR.,<br><br>        Plaintiffs,<br><br>v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT; OFFICER REGGIE RADER, in his individual capacity and official capacity; TASER INTERNATIONAL, INC., an Arizona Corporation; TASER INTERNATIONAL, INC., a Delaware Foreign Corporation; DOES I through X; DOES XI through XX; and ROE CORPORATIONS XXI through XXX, inclusive,<br><br>        Defendants. | 2:05-CV-1464-PMP-PAL<br><br>ORDER |

Presently before this Court is Taser International's Motion for Judgment on the Pleadings (Doc. #55) filed on May 11, 2005. Plaintiffs filed an Opposition (Doc. #58) on May 30, 2005. Defendant Taser International, Inc. ("Taser") filed a Reply (Doc. #62) on June 13, 2005.

///

## I.     BACKGROUND

On February 20, 2004, William Lomax Jr. ("Lomax") walked into the Emerald Gardens Apartment Complex, where armed security guards confronted him. (Pl.'s Mot. for Leave to Am. Complaint, Ex. 1 at 6.)  The security guards asked Lomax to leave the property. (Id.)  At that time Lomax removed and replaced his shirt several times, sweated profusely, leaned his head on a concrete barriers, made loud, incomprehensible noises, and did not respond to the guards' queries. (Id.)  Following Lomax's behavior, the security guards requested the Las Vegas Metropolitan Police Department ("LVMPD") come to the scene and administer medical care to Lomax. (Id.)  When Defendant Officer Reggie Radar ("Radar"), who was already at the Emerald Gardens Apartment Complex, arrived at the scene a fight began between Lomax and the security guards who attempted to stop Lomax from leaving the area. (Id.)

Radar intervened in the fight and commanded "Lomax to comply or be 'Tased' using a Taser issued him by LVMPD." (Id. at 7.)  Lomax did not respond.  As a result, Radar tased Lomax while other security officers held him in place, such that Lomax could not stop Radar from tasing him in the throat area. (Id.)  Radar subsequently tased Lomax a total of seven times, including several times while other security officers held Lomax, Lomax was handcuffed, and while Lomax was strapped to a medical response gurney. (Id.)

At some point, Clark County Fire Department EMT personnel became aware that Lomax had stopped breathing. (Id. at 8.)  The EMT personnel revived Lomax en route to the hospital. (Id.)  Lomax died twenty hours after the altercation. (Id.)  The Clark County Coroner's office listed as the cause of death "cardiac arrest resulting from restraining procedures while 'intoxicated.'" (Id.)

At all relevant times Taser manufactured, created, designed, supplied, marketed, advertised, and distributed Taser guns in interstate commerce, including Nevada. (Id.)  The Taser is a handheld device that fires two wires tipped with metal barbs. (Id.)  Upon firing,

the handheld device emits an electric charge which briefly electrocutes its target.  (Id. at 9.) Taser "theorizes that their [sic] device overwhelms the normal electrical signal within the body's nerve fibers, impairing the subject's ability to control their [sic] bodies or perform coordinated actions."  (Id.)  Plaintiffs allege Taser's theory is not based on objectively verifiable data.  (Id.)  A taser gun's initial impairment effect lasts up to five seconds and the effect can be lengthened for up to ten minutes by repeatedly firing a taser gun.  (Id. at 9.) Taser provided to LVMPD, trained LVMPD trainers and officers in the taser gun's use, provided policies and procedures for taser gun's use, provided maintenance, evaluation, and support for LVMPD's inventory of taser guns, and provided ongoing consultation and advice to LVMPD in regards to the taser gun's use.  (Id. at 8.)

On February 20, 2004, LVMPD issued Radar a Taser model X26 which Taser manufactured and sold to LVMPD.  (Id. at 9.)  The X26 has a range of twenty-one feet and delivers up to fifty thousand voltes of electricity.  (Id. at 10.)  In the taser gun training, LVMPD and Taser informed Radar that there was no limit to the amount of times a taser gun could be used on a potential assailant and that no injuries would result from continued use of a taser gun.  (Id. at 9.)

Taser markets the taser gun as a non-lethal and safe alternative to the use of guns and deadly force.  (Id. at 10.)  Representing Taser in a public debate, Taser officials have said the shock of a taser gun was comparable to "coming up behind your grandmother and screaming 'Boo.'"  (Id. at 12.)  As part of its marketing campaign, Taser assures law enforcement individuals that the taser gun may be used safely on "unarmed subjects, pregnant women, citizens over 80 years of age, children as young as age six, passively resisting or fleeing subjects, people already under restraint, individuals who are physically disabled, and . . . emotionally distressed individuals."  (Id. at 12-13.)

Plaintiffs filed an Amended Complaint in this Court alleging Defendants deprived Lomax of his right to due process, right to be free from excessive force, and right

3

to be free from pre-conviction punishment under the Fifth and Fourteenth Amendments, and right to equal protection as secured by the Fourteenth Amendment in violation of 42 U.S.C. § 1983 (claim 1). Additionally, Plaintiffs argue Defendants deprived them of their rights to a familial relationship without due process of law as protected by the Fourteenth Amendment in violation of 42 U.S.C. § 1983 (claim 2). Plaintiffs further allege that LVMPD's policy, practice and custom of inadequately training, officers in the use of the taser gun deprived Lomax of his constitutional rights and therefore LVMPD is liable as a municipality under 42 U.S.C. § 1983 (claim 3). Furthermore, Plaintiffs assert claims for negligence (claim 4), negligent supervision and training (claim 5), wrongful death (claim 6), strict liability for negligent design (claim 7), strict liability for negligent manufacturing (claim 8), strict liability for failure to warn (claim 9), negligence and gross negligence (claim 10), and breach of implied warranty (claim 11) under Nevada state law.

Taser now moves this Court for judgment on the pleadings as to Plaintiffs' claims under 42 U.S.C. § 1983, for breach of implied warranty, and for punitive damages. First, Taser argues Plaintiffs cannot state a cause of action for their first, second, and third claims under 42 U.S.C. § 1983 because Taser is a private entity, not a state actor. Second, Taser argues Plaintiffs cannot state a claim as a matter of law for their claim for breach of implied warranty because Plaintiffs failed to provide necessary notice of breach and because Plaintiffs are not in privity with Taser. Finally, Taser argues this Court should grant judgment on the pleadings with regard to Plaintiffs' claim for punitive damages because Plaintiffs did not plead their allegations of fraud with particularity, and therefore Plaintiffs have not stated a claim for punitive damages under Nevada law.

Plaintiffs respond that the Court should deny Taser's motion for judgment on the pleadings. First, Plaintiffs argue Taser formulated and helped implement LVMPD's policies and practices regarding the taser gun's uses of the taser gun, therefore Taser's action were thoroughly entwined with LVMPD and Taser acted under the color of law.

Second, Plaintiffs argue Taser acted as a joint actor with LVMPD when it sold, promoted, and helped deploy the taser guns. Third, Plaintiffs argue Taser trained and educated LVMPD officers regarding the taser guns uses, a traditional governmental function, and therefore is liable under 42 U.S.C. § 1983. Next, Plaintiffs argue their claim for punitive damages is proper because the Amended Complaint is based on allegations of malicious and oppressive conduct. Finally, Plaintiffs argue Lomax is a third party beneficiary under the contract between Taser and LVMPD. Thus, Plaintiffs argue Taser breached its duty to Lomax when it failed to disclose the taser gun's defects and privity is not required to enforce the implied warranty of merchantability.

## II.     LEGAL STANDARD

"A judgment on the pleadings [under Federal Rule of Civil Procedure 12(c)] is properly granted when, taking all allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." Nelson v. City of Irvine, 143 F.3d 1196, 1200 (9th Cir. 1998) (citing McGann v. Ernst & Young, 102 F.3d 390, 392 (9th Cir 1996). A motion for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c) may be brought "[a]fter the pleadings are closed but within such time as not to delay the trial. . . ." Fed. R. Civ. P. 12(c).

Generally, "judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue . . . ." Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir 1989). If a court considers "matters outside the pleadings" in its determination on a motion for judgment on the pleadings, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 [Summary Judgment], and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(c); see also Hal Roach Studios, 896 F.2d at 1550 (holding that if, on a 12(c) motion, a court considers evidence outside the pleadings, the court should apply the summary judgment standard).

### III. DISCUSSION

#### A. 42 U.S.C. § 1983 (claims 1, 2, and 3)

Title 42 U.S.C. § 1983 provides:

> [e]very person who, under color of [law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "To state a claim under § 1983, the plaintiff must allege a violation of his constitutional rights and show that the defendant's actions were taken under color of state law." Gritchen v. Collier, 254 F.3d 807, 812 (9th Cir. 2001). That the defendant act under color of state law is "'a jurisdictional requisite for a § 1983 action.'" Id. (quoting West v. Atkins, 487 U.S. 42, 46 (1988)). Similarly, a plaintiff basing a cause of action on alleged constitutional violations must show that the "actions complained of are 'fairly attributable' to the government." Morse v. N. Coast Opportunities, Inc., 118 F.3d 1338, 1340 (9th Cir. 1997).

Plaintiff's actions are against a private entity in its individual capacity. In determining whether a private actor acts under color of state law for § 1983 purposes, the ultimate issue is whether the alleged infringement of federal rights is fairly attributable to the government even though committed by private actors. Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 835 (9th Cir. 1999). An alleged violation is fairly attributable to the government when (1) it results from a governmental policy and (2) the defendant is a person who fairly may be said to be a governmental actor. Id. An action results from a governmental policy where the deprivation is "'caused by the exercise of some right or privilege created by the [government] or a rule of conduct imposed by the [government].'" Id. (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982)). With regard to the second prong, an individual may be a governmental actor "because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise

6

chargeable to the State." Lugar, 457 U.S. at 937. "Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." Rendell-Baker v. Kohn, 457 U.S. 830, 841 (1982).

A court begins with the presumption that private conduct does not constitute governmental action. Id. The courts have identified at least four tests to determine whether a private entity acts under the color of state law: (1) the private entity engages in conduct that is traditionally exclusively reserved to the state ("Public Function Test"); (2) the private entity acts jointly with the state ("Joint Action Test"); (3) the private entity acts under state compulsion or encouragement ("State Compulsion Test"); and (4) the private entity engages in conduct in which there is a sufficient nexus between the conduct and government regulation ("Government Nexus Test"). Johnson v. Knowles, 113 F.3d 1114, 1118 (9th Cir. 1997) (citing Collins v. Womancare, 878 F.2d 1145, 1148-49 (9th Cir. 1989)). An additional inquiry is whether there is the "pervasive entwinement" of a private organization with a public institution. Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 298-99 (2001). In Brentwood, the Court held that "[w]hen, therefore, the relevant facts show pervasive entwinement to the point of largely overlapping identity, the implication of state action is not affected by pointing out that the facts might not loom large under a different test." Id. at 303. Although these tests are helpful in determining state involvement, "'there is no specific formula for defining state action.'" Sutton, 192 F.3d at 836 (quoting Howerton v. Gabica, 708 F.2d 380, 383 (9th Cir. 1983) (citation and internal quotation marks omitted)). Rather, a court should look to whether a sufficiently close nexus between the state and the challenged conduct exists to fairly attribute the conduct to the state. Id. The inquiry is fact specific. Id.

Plaintiffs argue that Taser acted under the color of state law under three tests: 1) governmental nexus, 2) joint action, and 3) public function.

///

### 1. Governmental Nexus

Plaintiff argues that Taser's actions were entwined with LVMPD's actions and therefore Tased acted under the color of law because Taser sold the taser guns to LVMPD, trained LVMPD in the use of the guns, developed LVMPD policies and procedures regarding the use of taser guns, provided forensic and evidentiary support for criminal cases, and provided ongoing consulting services to LVMPD. Plaintiffs argue Taser certified the safety of the taser guns and advised LVMPD that multiple tases safely could be used on citizens. Plaintiffs argue that "[i]t would be a fair inference to say that Officer Rader was merely implementing a policy of Taser International when he administered the tases to the decedent." (Pls.' Opp'n to Def. Taser Int'l Inc.'s Mot. For Judgment on the Pleadings ["Opp'n"] at 8.)

Under the Government Nexus Test, a private entity acts under color of state law if "'there is a sufficiently close nexus between the State [and] the regulated entity so that the action of the latter may be fairly treated as that of the State itself.'" Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)). "'The mere fact that a [private actor] is subject to state regulation does not by itself convert its action into that of the state for purposes of the Fourteenth Amendment.'" Johnson, 113 F.3d at 1120 (quoting Jackson, 419 U.S. at 350). Additionally, employment by the state is an insufficient basis for establishing state action. Polk County v. Dodson, 454 U.S. 312, 324 (1981); Montano v. Hedgepeth, 120 F.3d 844, 849 (8th Cir. 1997) ("even when an officer of the state is named as a defendant in a § 1983 lawsuit, we must refrain from automatically assuming the existence of state action")).

Taking all allegations in the Amended Complaint as true, there is insufficient allegation of a close nexus between the State and Taser's actions such that Taser may be fairly treated as the State itself. See Blum, 457 U.S. at 1004. Plaintiff's allege Taser supplied LVMPD the taser guns and trained them to properly use the taser guns. These

allegations alone do not make Taser a state actor.  To adopt the standard Plaintiff urges, would make every LVMPD supplier a state actor under the Governmental Nexus Test.  By this standard, every car and gun manufacturer, which supplies LVMPD with the vehicles it drives and the weapons it uses, would be a state actor under § 1983, thereby substantially, and improperly, expanding the statute's scope.  Taser provided LVMPD with proper training on the product, and based on these specifications LVMPD independently established its practice and policy regarding the taser gun's uses.  The facts alleged establish Taser served as a consultant to LVMPD, not as a state actor under § 1983.

### 2. Joint Action

Plaintiffs argue that in selling, promoting, and deploying taser guns, Taser acted as a joint actor in LVMPD's use of the taser gun.  Specifically, Plaintiffs argue LVMPD was wholly dependent on Taser with regard to its "deployment" of the taser gun, and because Taser controls the supply, deployment, and servicing of LVMPD's taser guns, it is a state actor liable under § 1983.  Taser responds it was not a willful participant in LVMPD and Radar's actions on February 20, 2004 with regard to Lomax.  Additionally, Taser argues it does not dictate how, when, and where LVMPD uses the taser gun and therefore is not engaged in joint action with LVMPD.

"To be engaged in joint action, a private party must be a 'willful participant' with the State or its agents in an activity which deprives others of constitutional rights.'" Brunette v. Humane Society of Ventura County, 294 F.3d 1205, 1211 (9th Cir. 2002) (citing Dennis v. Sparks, 449 U.S. 24, 27 (9th Cir. 1980)). "Under the joint action test, we consider whether 'the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity. This occurs when the state knowingly accepts the benefits derived from unconstitutional behavior.'" Kirtley v. Rainey, 326 F.3d 1088, 1093 (9th Cir. 2003) (quoting Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1486 (9th Cir.1995)

9

Taking all allegations in the Amended Complaint as true, Taser was not engaged in joint action with LVMPD, and therefore is not a state actor under the joint action test. Plaintiffs allege Radar independently arrived at the scene wherein Lomax was engaged in a fight with the security guards. Plaintiffs further allege Radar repeatedly tased Lomax, including during times when he was restrained and on a medical gurney. Plaintiffs allege Taser trained LVMPD master trainers and officers in certification courses and provided ongoing maintenance and support to LVMPD for the taser guns. Plaintiffs allege that during training Taser advised LVMPD personnel that there is no limit to the amount of times a user may safety use the taser gun, and as a result of this training Officer Radar repeatedly tased Lomax, causing his death. These allegations do not establish LVMPD has so far insinuated itself with Taser that Taser is a joint participant in the alleged deprivation of Lomax's constitutional rights. First, the allegations establish that Taser trained LVMPD personnel in the taser gun's use, not that Taser willfully participated in Radar's alleged actions on February 20, 2004. That Taser manufactured a law enforcement weapon, sold that weapon to LVMPD, and then trained LVMPD in the weapon's use, does not make Taser a state actor under § 1983, nor does it make Taser a willful participant in the alleged improper use of the weapon. As noted previously, adopting the standard Plaintiffs urge would mean that every supplier to LVMPD whose materials LVMPD improperly used would be open to liability under § 1983, dramatically expanding the intended scope of the statute.

### 3. Public Function

Plaintiffs argue that in creating and implementing LVMPD's policies and procedures regarding use of the taser gun, Taser acted in a public function and therefore is liable as a state actor under § 1983. Specifically, Plaintiffs argue Taser created and implemented LVMPD policy and practice with regard to use of the Taser gun, and therefore was performing a public function. Furthermore, Plaintiffs argue that in training LVMPD

10

1  officers in the use of the taser gun, Taser was performing a governmental function.  Finally,
2  Plaintiffs argue because both LVMPD and Taser financially benefitted from the transaction,
3  Taser cannot escape liability as a private entity.  Taser responds generally that it is not a
4  governmental agency, but merely sold taser guns to LVMPD and trained them to use the
5  devices.
6        The Supreme Court has found "state action present in the exercise by a private
7  entity of powers traditionally exclusively reserved to the State."  Jackson v. Metropolitan
8  Edison Co., 419 U.S. 345, 352 (1974); see also Nixon v. Condon, 286 U.S. 73 (1932)
9  (election); Terry v. Adams, 345 U.S. 461 (1953) (election); Marsh v. Alabama, 326 U.S.
10 501 (1946) (company town); Evans v. Newton, 382 U.S. 296 (1966) (municipal park).
11 "'Under the public function test, when private individuals or groups are endowed by the
12 State with powers or functions governmental in nature, they become agencies or
13 instrumentalities of the State and subject to its constitutional limitations.'"  Kirtley v.
14 Rainey, 326 F.3d 1088, 1093 (9th Cir. 2003) (quoting Lee v. Katz, 276 F.3d 550, 554-55
15 (9th Cir. 2002)).  To satisfy the public function test, the public function must be
16 "traditionally and exclusively governmental" in nature.  Lee, 276 F.3d at 555.
17       Taking all allegations in the Amended Complaint as true, Taser is not a state
18 actor under the public function test for § 1983 purposes.  Selling taser guns and training
19 municipalities in the taser gun's use are not functions traditionally and exclusively
20 governmental in nature, and therefore performing such activities does not convert Taser into
21 a state actor.  LVMPD traditionally would not sell taser guns.  Plaintiffs allege Taser's
22 training LVMPD in the taser gun's proper usage constitutes state action.  However, training
23 a municipality on the proper use of a product does not convert an individual or a company
24 into a state actor for § 1983 purposes.  Taser was training LVMPD in the proper usage of
25 the product it sold.  These actions are not traditional governmental functions.
26       Taser is a private actor that did not act under the color of law and is not liable

under § 1983 as a matter of law.  Therefore, the Court will grant Taser's motion for judgment on the pleadings with regard to Plaintiffs' claims against Taser under 42 U.S.C. § 1983 (claims 1, 2, and 3).

### B. Breach of Implied Warranty

Taser moves this Court to grant judgment on the pleadings with regard to Plaintiffs' claim for breach of implied warranty.  Taser argues that Plaintiffs cannot state a claim for breach of implied warranty as a matter of law because Plaintiffs failed to provide notice of breach under the Uniform Commercial Code.  Furthermore, Taser argues Plaintiffs cannot state a claim for breach of implied warranty because Plaintiffs are not in privity with Taser.  Plaintiffs respond that Lomax was a third party beneficiary to the contract between LVMPD and Taser, and therefore Taser breached its duty to Lomax.  Additionally, Plaintiffs argue that under Nevada law neither privity nor notice are required to state a claim for breach of implied warranty.

In Nevada, contractual privity is a prerequisite for a breach of warranty action. Amundsen v. Ohio Brass Co., 513 P.2d 1234, 1235 (Nev. 1973); Long v. Flanigan Warehouse Co., 382 P.2d 399, 403 (Nev. 1963).  However with regard to third-party beneficiaries of implied warranties, Nevada Revised Statute 104.2318 provides:

> A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty.  A seller may not exclude or limit the operation of this section.

Nev. Rev. Stat. 104.2318.

Taking all allegations in the Amended Complaint as true, as a matter of law Plaintiffs cannot state a claim against Taser for breach of implied warranty.  Taser entered into an agreement with LVMPD to sell taser guns, train LVMPD officers on the taser gun's usage, and to provide ongoing support for LVMPD's taser gun supply.  Lomax was not a

1  named or intended third party beneficiary of the contract between Lomax and Taser.
2  Because Lomax was not in privity with Taser, Plaintiffs cannot state a cause of action for
3  breach of implied warranty as a matter of law.  See Amundsen, 513 P.2d at 1235.
4      Nevada Revised Statute 104.2318 does not compel a different result.  Nevada
5  Revised Statute 104.2318 exempts from the contract privity requirement those that are
6  family or part of the buyer's household, or a guest in the buyer's home.  Nev. Rev. Stat.
7  104.2318.  Lomax does not meet any of Nevada Revised Statute 104.2318's exceptions.
8  See id.  Lomax is not part of LVMPD's family or household.  Nor may Lomax be
9  considered LVMPD's guest, as Plaintiffs urge.  Lomax was apprehended in an apartment
10 complex in Las Vegas, Nevada, not in a police sub-station.  His intrusion was uninvited, not
11 welcome.  Plaintiffs' interpretation of the statute would imply that all individuals currently
12 in Las Vegas are LVMPD's guests, and the entire metropolitan area is its home.  This
13 interpretation substantially broadens the intended meaning of Nevada Revised Statute
14 104.2318 and therefore is incorrect.  For these reasons, the Court will grant Taser's motion
15 for judgment as a matter of law with regard to Plaintiffs' claim for breach of implied
16 warranty as to Taser (claim 11).

17     **C.     Punitive Damages**

18      Taser moves this Court to grant judgment on the pleadings with regard to
19 Plaintiffs' claims for punitive damages.  Taser argues that under Nevada law punitive
20 damages are allowed only where there is evidence of oppression, fraud, and malice.  Taser
21 further argues that claims of fraud must be plead with particularity, and because Plaintiffs
22 did not plead their claim against Taser with particularity, Plaintiffs' claim for punitive
23 damages should be dismissed as a matter of law.  Plaintiffs respond that their pleading
24 meets Federal Rule of Civil Procedure 9(b)'s requirements for pleading fraud with
25 particularity.  Alternatively, Plaintiffs argue that the facts necessary to plead their claims of
26 fraud with particularity are within Defendants' exclusive province and in such a situation

13

Plaintiffs are not required to plead with particularity. Additionally, Plaintiffs argue that Taser's malicious or oppressive action of continuing to train and supply LVMPD with regard to taser guns justifies a claim for punitive damages.

Nevada Revised Statute 42.005 provides:

> Except as otherwise provided in NRS 42.007, in an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied, the plaintiff, in addition to the compensatory damages, may recover damages for the sake of example and by way of punishing the defendant.

Nev. Rev. Stat. 42.005. In Nevada, ["p]unitive damages are not designed to compensate a party but are awarded 'for the sake of example and by way of punishing the defendant.'" Evans v. Dean Witter Reynolds, Inc., 5 P.3d 1043, 1052 (Nev 2000) (quoting Nev. Rev. Stat. 42.005(1)). "Malice," express or implied, is defined as "conduct which is intended to injure a person or despicable conduct which is engaged in the conscious disregard of the rights or safety of others." Nev. Rev. Stat. 42.001(3). "Fraud," as defined by Nevada Revised Statute 42.001 "means an intentional misrepresentation, deception or concealment of a material fact known to the person with the intent to deprive another person of his rights or property or to otherwise injure another person." Nev. Rev. Stat. 42.001(2). "'Conscious disregard' means the knowledge of the probable harmful consequences of a wrongful act and a willful and deliberate failure to act to avoid those consequences." Nev. Rev. Stat. 42.001(1).

Taking all allegations in the pleadings as true, this Court will deny Taser's motion for judgment on the pleadings with regard to Plaintiffs' claim for punitive damages. Nevada Revised Statute 42.005 provides that punitive damages may be proper where a defendant has been found guilty of oppression, fraud, or malice. See Nev. Rev. Stat 42.005. Plaintiffs allege Taser manufactured, created, designed, supplied, marketed, and advertised on behalf of the taser gun in interstate commerce. (Am. Compl. at 8.) Plaintiffs further

allege that Taser expressly marketed the taser gun as non-lethal and safe, despite having knowledge of several scientific studies containing negative information about the taser gun. (Id. at 8, 11.) Plaintiffs allege police departments, including LVMPD, routinely use taser guns to subdue citizens. (Id. at 12.) Plaintiffs allege that because of Taser's safety assurances, LVMPD Officer Radar repeatedly tased Lomax causing his death. These allegations may be considered malice or "despicable conduct which is engaged in the conscious disregard of the rights or safety of others." Taking all allegations as true, it may be said that Taser's alleged deliberate obfuscation of the truth regarding the taser gun's safety, may amount to a conscious disregard of the safety of those upon whom the taser gun is used. Thus, Plaintiffs sufficiently have state a claim for punitive damages, and this Court will deny Taser's motion for judgment as a matter of law with regard to Plaintiffs' remedy of punitive damages.

Taser also argues that Plaintiffs' claim for punitive damages sounds in fraud, and therefore Plaintiffs' claim must meet Rule 9(b)'s heightened pleading requirement. Taser argues that in Vess v. Ciba-Geigy Corp, USA, 317 F.3d 1097, 1104 (9th Cir. 2003) the United States Court of Appeals for the Ninth Circuit held that where a claim is grounded in fraud, pleading with particularity is required.

In Vess, the plaintiff brought a diversity case for violations of the California Legal Remedies Act and the California Unfair Business Practice Laws. Id. at 1100. The complaint alleged that the defendants "fraudulently and falsely" made representations upon which the plaintiff depended. Id. at 1101. The district court dismissed the plaintiff's claim for failing to plead fraud with particularity. Id. The plaintiff appealed arguing that fraud was not an essential element of the statute on which he relied, and therefore such averments are not required to meet Rule 9(b)'s heightened pleading standard. Id. at 1103. The Ninth Circuit held that where a plaintiff chooses to alleged in the complaint fraudulent conduct, even where fraud is not a necessary element of a claim, such averments must meet Rule

9(b)'s heightened pleading standard.  Id.  "In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."  Id. at 1103-04.  Vess does not compel a different result in the present matter.  Unlike Vess, Plaintiffs have not alleged fraudulent conduct, but instead have alleged malice, express or implied.  In the present matter, Plaintiffs have sufficiently alleged malice, which does not require heightened pleading under Rule 9(b).

**IV.     CONCLUSION**

IT IS THEREFORE ORDERED that Taser Int'l's Motion for Judgment on the Pleadings (Doc. #55) is hereby GRANTED in part and DENIED in part.

Taser's Motion for Judgment on the Pleadings is GRANTED with regard to Plaintiffs' claims under 42 U.S.C. § 1983 (claims 1,2, and 3) and Plaintiffs claims for breach of implied warranty (claim 11).

Taser's motion is DENIED with regard to Plaintiffs' claim for punitive damages.

DATE:  July 17, 2006

_____
PHILIP M. PRO
Chief United States District Judge