1

2

3

4                          UNITED STATES DISTRICT COURT

5                             DISTRICT OF NEVADA

6                                    * * *

7   LaKISHA NEAL-LOMAX, LaKISHA          )
    NEAL-LOMAX as parent and guardian of )
8   JOSHUA WILLIAM LOMAX, LaKISHA        )
    NEAL-LOMAX as parent and guardian of )
9   ALIAYA TIERRAEE LOMAX, and           )        2:05-CV-1464-PMP-RJJ
    JOYCE CHARLESTON, individually, and  )
10  as Special Administrator of the Estate of )     O R D E R
    WILLIAM D. LOMAX, JR.,               )
11                                       )
                Plaintiff,               )
12                                       )
    v.                                   )
13                                       )
    LAS VEGAS METROPOLITAN POLICE        )
14  DEPARTMENT; OFFICER REGGIE           )
    RADER, in his individual capacity and )
15  official capacity; TASER             )
    INTERNATIONAL, INC., an Arizona      )
16  Corporation; TASER INTERNATIONAL,    )
    INC., a Delaware Foreign Corporation; )
17  DOES I through X; DOES XI through XX; )
    and ROE CORPORATIONS XXI through     )
18  XXX, inclusive,                      )
                                         )
19              Defendant.               )
                                         )
20  _____  )

21          Presently before this Court is Defendants Las Vegas Metropolitan Police

22  Department ("LVMPD") and Officer Reggie Rader's ("Rader") Renewed Motion for

23  Judgment on the Pleadings (Doc. #57) filed on May 17, 2006.  Plaintiffs filed an Opposition

24  (Doc. #61) on June 5, 2006.  Defendants filed a Reply (Doc. #63) on June 14, 2006.

25  ///

26  ///

1    **I.        BACKGROUND[1]**

2        On February 20, 2004, William Lomax Jr. ("Lomax") walked into the Emerald

3    Gardens Apartment Complex, where private armed security guards confronted him because

4    he was exhibiting strange behavior.  (First Am. Compl. [Doc. #50] at 6.)  The security

5    guards observed Lomax while he removed and replaced his shirt several times, sweated

6    profusely, leaned his head on concrete barriers, and made loud, incomprehensible noises.

7    (Id.)  In response to Lomax's behavior, the security guards requested LVMPD assistance in

8    getting Lomax medical care.  (Id. at 7.)  Rader was already at the Emerald Gardens

9    Apartment Complex on another call.  (Id.)  Upon Rader's arrival at the scene, a fight

10   commenced between Lomax and the security guards who attempted to stop Lomax from

11   leaving the area.  (Id.)

12       Rader intervened in the fight and commanded Lomax "to comply or be 'Tased'"

13   using a Taser device issued him by LVMPD.  (Id.)  Subsequently, Rader tased Lomax while

14   the private security guards held him in place.  (Id.)  Rader tased Lomax a total of seven

15   times.  (Id.)  Of those seven times, Rader tased Lomax approximately three times while the

16   security guards handcuffed and held Lomax down and approximately four more times after

17   Lomax was handcuffed and strapped to a medical response Gurney.  (Id.)

18       At some point, Clark County Fire Department EMT personnel noticed that

19   Lomax had stopped breathing.  (Id. at 8.)  The EMT personnel revived Lomax en route to

20   the hospital.  (Id.)  Lomax, however, died twenty hours after the altercation.  (Id.)  The

21   Clark County Coroner's office listed as the cause of death "cardiac arrest resulting from

22   restraining procedures while 'intoxicated.'"  (Id.)

23       The Taser is a handheld device that fires two wires tipped with metal barbs.  (Id.

24   _____

25       [1] For the purpose of Defendants' Motion for Judgment on the Pleadings, the Court will
     take the following facts, as stated in the Amended Complaint, as true.  See Nelson v. City of
26   Irvine, 143 F.3d 1196, 1200 (9th Cir. 1998).

at 9.)  Upon firing, the handheld device emits an electric charge which briefly "electrocutes" its target.  (Id.)  Taser "theorizes that their [sic] device overwhelms the normal electrical signals within the body's nerve fibers, impairing the subject's ability to control their [sic] bodies or perform coordinated actions."  (Id.)  Plaintiffs allege Taser's theory is not based on objectively verifiable data.  (Id.)  A taser device's initial impairment effect lasts up to five seconds and the effect can be lengthened for up to ten minutes by repeatedly firing a taser device.  (Id. at 10.)  Taser provided taser devices to LVMPD, trained LVMPD trainers and officers in the use of the Taser devices, provided policies and procedures for use of the taser devices, provided maintenance, evaluation, and support for LVMPD's inventory of taser devices, and provided ongoing consultation and advice to LVMPD regarding the use of taser devices.  (Id. at 8.)

On February 20, 2004, LVMPD issued Rader taser device model X26 which Taser had manufactured and sold to LVMPD.  (Id. at 9.)  The X26 has a range of twenty-one feet and delivers up to fifty thousand volts of electricity.  (Id. at 10.)  LVMPD and Taser trained Rader that there was no limit to the amount of times he could use a taser device on a potential assailant and that no injuries would result from continued use of a taser device.  (Id. at 9.)

Taser markets the taser device as a non-lethal and safe alternative to the use of guns and deadly force.  (Id. at 10.)  Representing Taser in a public debate, Taser officials compared the shock of a taser device to "coming up behind your grandmother and screaming 'Boo.'"  (Id. at 12.)  As a result of its marketing initiative, Taser has trained law enforcement individuals that the taser device safely may be used on "unarmed subjects, pregnant women, citizen[s] over 80 years of age, children as young as age six, passively resisting or fleeing subjects, people already under restraint, individuals who are physically disabled, and . . . emotionally distressed individuals."  (Id. at 12-13.)

///

Plaintiffs filed an Amended Complaint in this Court alleging Defendants deprived Lomax of his right to due process, right to be free from excessive force, and right to be free from pre-conviction punishment under the Fourth and Fourteenth Amendments, and equal protection as secured by the Fourteenth Amendment.  Plaintiffs bring these claims under 42 U.S.C. § 1983 (claim 1).  Plaintiffs also allege Defendants deprived them of their rights to a familial relationship without due process of the law as protected by the Fourteenth Amendment.  Plaintiffs bring this claim under 42 U.S.C. § 1983 (claim 2).  Plaintiffs further allege LVMPD's policy, practice, and custom of inadequately training and supervising officers in the use of the taser device deprived Lomax of his constitutional rights and therefore LVMPD is liable as a municipality under 42 U.S.C. § 1983 (claim 3).  Additionally, Plaintiffs claim negligence (claim 4), negligent supervision and training (claim 5), and wrongful death (claim 6).[2]

LVMPD and Rader now move this Court to grant judgment on the pleadings.  LVMPD and Rader argue that Plaintiffs' excessive force claim (claim 1) should be limited to a Fourth Amendment analysis because Lomax was an arrestee at the time Rader allegedly used excessive force.  In addition, LVMPD and Rader argue Nevada Revised Statute 41.032 bars Plaintiffs' claims for negligence (claim 4) and negligent supervision and training (claim 5) because Defendants' conduct was discretionary.

Plaintiffs respond that the Fourteenth and Fourth Amendments govern the application of force and therefore Plaintiffs' first claim for relief should not be limited to a Fourth Amendment analysis alone.  Furthermore, Plaintiffs argue the doctrine of discretionary immunity does not bar their claim for negligence or negligent supervision and training because Rader's decision to repeatedly tase Lomax and LVMPD's failure to properly train or supervise Rader were operational in nature, not discretionary, and Nevada

---

[2] Plaintiffs also assert other claims that do no involve these Defendants.

Revised Statute 41.032 is therefore inapplicable.

**II.      LEGAL STANDARD**

"A judgment on the pleadings [under Federal Rule of Civil Procedure 12(c)] is properly granted when, taking all allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." Nelson v. City of Irvine, 143 F.3d 1196, 1200 (9th Cir. 1998) (citing McGann v. Ernst & Young, 102 F.3d 390, 392 (9th Cir 1996)).  A motion for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c) may be brought "[a]fter the pleadings are closed but within such time as not to delay the trial . . . ." Fed. R. Civ. P. 12(c).

Generally, "judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue . . . ." Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1550 (9th Cir. 1990).  If a court does consider "matters outside the pleadings" in its determination on a motion for judgment on the pleadings, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(c); see also Hal Roach Studios, 896 F.2d at 1550 (holding that if, on a 12(c) motion, a court considers evidence outside the pleadings, the court should apply the summary judgment standard).

**III.     DISCUSSION**

**A.      42 U.S.C. § 1983 Excessive Force Claim (claim 1)**

In this case, both parties agree a Fourth Amendment analysis applies to Plaintiffs' excessive force claim.  Defendants, however, argue the Court should analyze Rader's conduct in seizing Lomax only under the Fourth Amendment.  Conversely, Plaintiffs argue the Court also may analyze Rader's conduct under the Due Process Clause of the Fourteenth Amendment because Lomax was no longer an arrestee after he was handcuffed and strapped to a medical Gurney, he was a pretrial detainee; and because Rader's conduct

"shocks the conscience" of the court.

### 1.    Arrestee vs. Pretrial Detainee

Title 42 U.S.C. § 1983 provides:

> [e]very person who, under color of [law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  The analysis of an excessive force claim brought pursuant to § 1983 begins with "identifying the specific constitutional right allegedly infringed by the challenged application of force."  Graham v. Connor, 490 U.S. 386, 394 (1989).  In most cases, "that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct."  Id.  Then, "[t]he validity of the claim must . . . be judged by reference to the specific constitutional standard which governs that right, rather than some generalized 'excessive force' standard."  Id.

Where a claim of excessive force arises in the context of an investigatory stop, arrest, or other "seizure" of a free citizen, the claim is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard."  Graham, 490 U.S. at 388; see also Reed v. Hoy, 909 F.2d 324, 329 (9th Cir. 1989) (stating that "excessive force claims arising before or during arrest are to be analyzed exclusively under the fourth amendment's reasonableness standard").  Once a "seizure" or "arrest" ends, however, and "pretrial detention" begins, the Due Process Clause of the Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment."  Graham, 490 U.S. at 395 n.10; see also Bell v. Wolfish, 441 U.S. 520, 535-39 (1979).

///

1    In <u>Robins v. Harum</u>, the Ninth Circuit considered the duration of a "seizure" for

2  Fourth Amendment purposes.  773 F.2d 1004 (9th Cir. 1985).  In that case, two sheriff's

3  deputies arrested Mr. and Mrs. Robins and while en route to the county jail the deputies got

4  into a fight with the Robinses.  <u>Id.</u> at 1006.  As a result of the deputies' conduct, the

5  Robinses sued alleging use of excessive force in violation of the Fourth and Fourteenth

6  Amendments.  <u>Id.</u>  The Ninth Circuit concluded that even though the deputies already had

7  arrested the Robinses and were en route to the police station when they allegedly used

8  excessive force, the Robinses remained "arrestees" because "once a seizure has occurred, it

9  continues throughout the time the arrestee is in the custody of the arresting officers."  <u>Id.</u> at

10  1009-10.

11    Taking the allegations in the Amended Complaint as true, Rader allegedly used

12  excessive force contemporaneously with seizing Lomax and while Lomax was in Rader's

13  custody, thus Lomax did not become a pretrial detainee even after Rader handcuffed and

14  restrained him.  According to <u>Robins</u>, Lomax was an arrestee, and thus the Fourth

15  Amendment governs his seizure until he no longer was in Rader's custody.  Therefore,

16  Lomax was not a pretrial detainee, and the Fourteenth Amendment does not apply to his

17  excessive force claim.

18    2.   <u>Shocks the Conscience Standard</u>

19    Plaintiffs also argue Rader's conduct violates the Due Process Clause of the

20  Fourteenth Amendment under the "shocks the conscience" standard articulated in <u>Rochin v.</u>

21  <u>California</u>, 342 U.S. 165 (1952).  In <u>Rochin</u>, the United States Supreme Court overturned

22  the defendant's conviction because the police forced an emetic solution down the

23  defendant's throat to induce the defendant to vomit up evidence he had swallowed.  <u>Id.</u> at

24  166.  The Court found the police's conduct "shock[ed] the conscience" and therefore

25  violated the Due Process Clause of the Fourteenth Amendment.  <u>Id.</u> at 172.

26  ///

1    Almost forty years after <u>Rochin</u>, the Supreme Court decided <u>Graham</u>, in which

2    the Court explained that "[b]ecause the Fourth Amendment provides an explicit textual

3    source of constitutional protection against . . . physically intrusive governmental conduct,

4    that Amendment, not the more generalized notion of 'substantive due process,' must be the

5    guide for analyzing these claims." 490 U.S. at 395. A "substantive due process analysis is

6    therefore inappropriate . . . if respondent's claim is 'covered by' the Fourth Amendment."

7    <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 843 (1998). The Supreme Court has stated

8    that <u>Rochin</u> "today would be treated under the Fourth Amendment[.]" <u>Id.</u> at 850 n.9.

9    Accordingly, because the Fourth Amendment applies to Plaintiffs' excessive force claim,

10   that Amendment, not the Due Process Clause, guides the analysis. Therefore, Defendants'

11   Motion for Judgment on the Pleadings with respect to Plaintiffs' first claim for relief will be

12   granted in that only the Fourth Amendment applies to Plaintiffs' excessive force claim.

13                     **B.      Discretionary Immunity**

14                          1.    Negligence (claim 4)

15   Defendants argue the Court should dismiss Plaintiffs' negligence claim because

16   the doctrine of discretionary immunity shields Defendants from liability. Conversely,

17   Plaintiffs argue that Rader's repeated "tasing" of Lomax was "operational" in nature and

18   therefore Defendants are not immune from liability.

19   The State of Nevada waived its sovereign immunity by enacting Nevada Revised

20   Statute 41.031. <u>Andolino v. State</u>, 624 P.2d 7, 9 (Nev. 1981). The State's waiver of

21   immunity, however, was not absolute; it elected to maintain immunity for policy related or

22   discretionary acts. <u>Id.</u>; Nev. Rev. Stat. § 41.032 (stating, in relevant part, that no action may

23   be brought against a state officer or employee which is "[b]ased upon the exercise of

24   performance or the failure to exercise or perform a discretionary function or duty on the part

25   of the state or any of its agencies or political subdivisions . . . whether or not the discretion

26   involved is abused."). Thus, governmental immunity is "usually considered by the courts in

terms of whether the acts in question 'are regarded as "discretionary," or "quasi-judicial," in character, requiring personal deliberation, decision and judgment, [or] merely "ministerial," amounting only to obedience to orders, or the performance of a duty in which the officer is left no choice of his own.'" Bd. Of County Comm'rs v. Cirac, 639 P.2d 538, 539 (Nev. 1982) (quoting William Prosser, Law of Torts § 132 at 988-89 (4th ed. 1971)).

Police officers are officers of the State and their discretionary acts are immune from liability. See e.g. Maturi v. Las Vegas Metro. Police Dep't, 871 P.2d 932, 933-34 (Nev. 1994). An officer's decision to stop a person and subsequently to take the person to jail are discretionary because those decisions require the police officer to use his personal judgment. Ortega v. Reyna, 953 P.2d 18, 23 (Nev. 1998). Further, whether a police officer handcuffs a prisoner in front or in back is a matter of discretion "based on such considerations as the prisoner's size, strength and, in the judgment of the officer, the potential for violence or escape." Maturi, 871 P.2d at 934. Although officers may make a wrong choice in certain situations, they are still exercising discretion. Id.

While an officer's decision to stop a suspect is discretionary, an officer's use of force may become operational if there is a specific policy in place with which the officer must comply, thus leaving the officer no choice of his own. See Perrin v. Gentner, 177 F. Supp. 2d 1115, 1126 (D. Nev. 2001) (holding that an officer's use of deadly force was operational because LVMPD had an alleged "profiling policy" in place). More often than not, however, "police officers are . . . forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." Herrera v. Las Vegas Metro. Police Dep't, 298 F. Supp. 2d 1043, 1054 (D. Nev. 2004) (internal citation omitted). Accordingly, police officers' "strategy for approaching [a suspect], the moment by moment decisions they [make] throughout the interaction, and their ultimate use of lethal force [are], as a matter of law, discretionary acts." Id.

Here, Defendants' acts were discretionary and therefore immune from liability. Lomax was "exhibiting strange behavior indicative of someone experiencing a mental deficiency" at the time the security guards confronted him.  (Pl.'s Am. Compl. at 6.)  When officer Rader arrived on the scene he witnessed the security guards wrestling with Lomax and intervened by instructing Lomax to comply or be "tased."  (Id. at 7.)  Rader then proceeded to tase Lomax multiple times while he was being handcuffed and strapped to a medical Gurney and even after Lomax was restrained.  (Id.)  According to the Amended Complaint, Rader was trained "that no limit existed to the amount of times a Taser could be used on a potential assailant and that no injuries would result except for those arising from falling in response to the effect of the Taser device."  (Id. at 9.)

Officer Rader was required to use his judgment and discretion in handling this situation.  Rader's strategy for approaching Lomax as he was wrestling with security guards, his decision to use the Taser device, and the number of "tasings" necessary to bring Lomax into a compliant state were, as a matter of law, discretionary acts.  Rader was neither following an order to tase Lomax nor duty-bound to tase Lomax in the manner alleged.  To the contrary, Rader's actions required personal judgment and constant reassessment of an uncertain situation.  While perhaps Rader incorrectly assessed the amount of force necessary, he made a choice in the exercise of discretion.

Further, the Amended Complaint does not allege LVMPD has promulgated a "tasing" policy or that Rader failed to comply with such a policy.  Plaintiffs attempt to make Rader's conduct operational by arguing Rader "carried out LVMPD policy and training" which permits multiple tasings.  (See Pl.'s Opp'n to Def.'s Mot. for J. on Pleadings at 10.) A policy permitting multiple tasings, however, is not the type of policy that requires "the performance of a duty in which the officer is left no choice of his own" because the alleged policy of permitting multiple tasings itself grants an officer discretion in deciding how often to use his Taser device.  Because Rader's acts were discretionary, Defendants are entitled to

1   discretionary immunity under Nevada Revised Statute 41.032.  Thus, the Court will grant

2   Defendants' Motion for Judgment on the Pleadings with respect to Plaintiffs' negligence

3   claim as it pertains to Rader's use of his Taser device.[3]

4                    2.   Negligent Supervision and Training (claim 5)

5            Defendants argue Plaintiffs' claim for negligent supervision and training falls

6   under the discretionary immunity statute articulated above and therefore should be

7   dismissed.  Plaintiffs argue that supervising and training police officers are operational

8   activities that subject Defendants to liability.

9            The LVMPD "assumes the obligation to ensure that its employees do not pose an

10  unreasonable safety risk to those with whom they come into contact.  Therefore, the training

11  and supervision of officers is not a 'discretionary function,' but rather an 'operational

12  function' for which [LVMPD] does not enjoy immunity under the statute."  Herrera, 298 F.

13  Supp. 2d at 1054-55 (internal citation and footnote omitted); see also Perrin, 177 F. Supp.

14  2d at 1126 (denying summary judgment because "Defendant [LVMPD's] training and

15  supervision of Officer Gentner constituted an 'operational function' for which [LVMPD]

16  does not enjoy immunity under NRS 41.032."); Kiles v. City of North Las Vegas, No.

17  2:03CV01246 KJDPAL 2006 WL 1967469, at *6 (D. Nev. July 12, 2006) (holding "the

18  City of North Las Vegas and the North Las Vegas Police Department are not immune from

19  liability on the state law claims for failure to supervise and failure to train" because such

20  activities are operational, not discretionary).  Accordingly, the Court will deny Defendants'

21  Motion for Judgment on the Pleadings regarding Plaintiffs' claim for negligent supervision

22

23  ───────────────

        [3] Plaintiffs argue the Amended Complaint's language is broad enough to support various
24  negligence claims including negligent strapping of Lomax's body to the Gurney, negligent positioning
    of Lomax's body on the Gurney, negligent maintenance of Rader's Taser device, and failure to aid
25  Lomax.  The Amended Complaint, however, contains no factual allegations or otherwise puts
    Defendants on notice that Plaintiffs were alleging negligence for any conduct other than excessively
26  tasing Lomax.

1  and training.[4]

2  **IV.      CONCLUSION**

3          IT IS THEREFORE ORDERED that Defendants' Renewed Motion for Judgment

4  on the Pleadings (Doc. #57) is hereby GRANTED in part and DENIED in part.

5  Defendants' Motion for Judgment on the Pleadings is GRANTED with regard to Plaintiffs'

6  excessive force claim under 42 U.S.C. § 1983 (first claim) to the extent that Plaintiffs'

7  claim will be limited to whether Plaintiffs' rights under the Fourth Amendment were

8  violated.  Defendants' Motion for Judgment on the Pleadings also is GRANTED with

9  regard to Plaintiffs' negligence claim (fourth claim).  Defendants' Motion for Judgment on

10  the Pleadings is DENIED with regard to Plaintiffs' negligent supervision and training claim

11  (fifth claim).

12

13  DATED:   September 14, 2006

14

15  _____

16  PHILIP M. PRO
    Chief United States District Judge

17

18

19

20

21

22

23

24

25          [4]  Defendants suggested the public duty doctrine bars relief but Defendants did not offer
    supporting law or argument on this issue.  Therefore, the Court will not consider the issue.  See Fed.
26  R. Civ. P. 7(b).